B.C. Ranch II, etc. v. Commissioner of Internal Revenue. And we'll hear first from Mr. Levenger and then Mr. Houser. Ms. Houser. Oh, I'm sorry, Ms. Houser. May it please the Court, I'm Jeff Levenger for BCR Partnerships. This is a partnership tax dispute that involves three, I think, fairly distinct issues. One is whether the partnerships are entitled to a deduction for their donation of conservation easements. The second is whether a 40% gross valuation of the statement penalty is applicable under the tax court's ruling. And the third is whether and to what extent the limited partners' capital contributions were made in exchange for so-called disguised sales of partnership property as distinct from partnership interests. As to each of these issues, I submit to you that the tax court either misapplied the law, ignored undisputed facts, or in some cases did both. What I'd like to do today is to begin by discussing the penalty, which both sides agree was erroneously imposed under the tax court's ruling. Then I'd like to talk about the disguised sale issue, and then I'd like to talk about the two aspects of the tax court's disallowance of the deductions, the perpetuity requirement and the baseline documentation requirement. Starting with the penalty, as I said, both sides agree that the tax court erred in applying the gross valuation of the statement penalty based solely on a disallowance ruling that had nothing whatsoever to do with the value of the easements. So what is the right, if we agree with both sides, then what is the right result, the right remedy for that? Well, as to the penalty, Your Honor, the right result is to vacate it. Okay, then we remand to consider whether they're properly applied. There could be a penalty? The answer to that depends. It depends on what this court does with respect to the deduction. If you were to agree with us and reverse with respect to the deduction, in other words, you agree with us as to both the baseline documentation issue and the perpetuity issue, we recognize that there's going to have to be a remand. There will have to be a remand for the tax court to decide these alternative arguments they raise, including valuation, the applicability of a penalty, and whatever defenses we have available. For example, the reasonable cause defense that actually the court already foreshadowed is available to the BCR1 partnership. So the penalty would be back on the table but in a different context if we agreed with you on the deduction? Correct, correct. If we disagree with you on the deduction, then what happens to the penalty? That's my next point. It should be over with respect to both the deduction. We vacate the penalty and we move on, that's what you would argue, if we agreed with the IRS or the commissioner on the deduction issue? Yes, if you were to affirm, in other words, agree that the tax court got it right with respect to either the perpetuity requirement or the baseline documentation requirement, and therefore the deduction should be disallowed in their entirety, that should be the end of it. They should not have a second chance to be able to go back and say, you know, we'll take the court's complete disallowance of the deduction, but we want either this court or the tax court to consider valuation, which at best would result in only a partial disallowance of the deduction because they admit that the easements have value, all for the sole purpose of trying to set themselves up to get this gross valuation misstatement penalty. And that type of relief, I think, is foreclosed both procedurally and substantively. I'll first talk about procedurally. The commissioner did not timely seek the relief he's now seeking in the court below. He did file a motion for reconsideration, but he did so admittedly far too late outside the time frame and therefore filed a motion for leave to file an out-of-time motion for consideration, which was denied, as it should have been. Secondly, the commissioner did not file a cross-appeal in this court. Even though he's seeking to expand upon his rights by altering or modifying the tax court's decision and judgment. And thirdly, he's not challenging any of the tax court's rulings in this appeal with respect to the valuation issue. Substantively, if the commissioner succeeds in having the deductions totally disallowed on non-valuation grounds, in other words, if this court were to affirm, there's no case, there's no statute that supports giving him the second chance, this further opportunity he seeks to go to either have this court or to go back to the tax court, to do a valuation that would at best result in a partial disallowance, just for the sole purpose of trying to set up this 40 percent gross value. A partial disallowance is something that's already been fully disallowed under that period. Exactly. Exactly. The analogy I think of is it's sort of like the New England Patriots scoring the winning touchdown in sudden death overtime in the Super Bowl and then saying, well, we want the ball back so we can go back and try to kick a field goal for the purpose of beating the point spread or something. It's not a great analogy, but I think it illustrates that they're trying to essentially have their cake and eat it too. They're trying to pile on if they were to succeed in getting the deduction disallowed in its entirety. There's no basis for them going further. It should be over if this court were to affirm. What would be the result on the 40 or 20 percent penalty then if it were just affirmed? Well, the penalty would be vacated because everybody admits that the tax court erred by imposing the 40 percent gross valuation misstatement penalty based on his ruling, which was purely based on non-valuation grounds. You can't impose a gross valuation misstatement penalty. So an affirmance would vacate or void those penalties? Correct. Correct. The deduction would be disallowed in its entirety for sure, but the penalty would be vacated. And they say, well, but that's not right. That allows the taxpayer to essentially evade any penalty. And to that I say that was the commissioner's own choice. Well, let's flip it over. Suppose we were to reverse on those two issues. The perpetuity and the baseline. Yes. The deduction and the – I'm having trouble naming it. Well, the perpetuity requirement and the baseline documentation. Perpetuity and the baseline. Yes. All right. What then? Well, we recognize that you would have to remand. For? Well, for the tax court to consider their valuation argument, which he didn't decide. They asked this court to decide the valuation, but it can't be done. It would need to be remanded in this court. The value of the deduction? The value of the easements. Yes. The value of the easements. So what, the amount of the deduction should have been? Correct. Can I ask you on that? I'm sitting here in a law school and I feel like I'm going to ask a stupid question, but that's okay. I've already graduated. It seems like there's all this discussion about the fact that they got the value of the deduction as being part of the value of what they bought when they bought the partnership interest. But isn't it always true when you donate to charity that you get the value of the deduction? Judge Haynes, if I'm understanding your question, to take a charitable contribution donation for a conservation easement, you have to meet a number of steps under Section 170, one of which is the perpetuity requirement, another of which is the baseline documentation requirement, and the court held that we did not satisfy either one. We say we did. Right, but there's also an argument that was made that for $350,000, you got $350,000, or maybe I'm getting the amount wrong, but you got $350,000 worth of value, and therefore you really didn't make any kind of donation. Judge Haynes, I think you may be conflating the disguised sale issue, which implicates that $350,000 with a deduction issue, which is a separate issue. Okay, but I guess what I'm trying to ask on that, you gave $350,000, and they're saying you got $350,000 worth of value, so it really was a sale, right? Is that their argument or no? As I understand their argument, they're saying that when the limited partners contributed $350,000, or in some cases more than that, $550,000 for a handful of them, that money was exchanged for partnership property, they say. Right, and you included the value of the easement. Isn't that where the value of the easement comes in? No, it's the value of the home site parcel. But I thought that they're, okay, and maybe I'm just, I found this very difficult to understand the disguised sale argument, so I just may be, I'm sure my colleagues got it right off the bat, but I didn't. Let me try. So here it is. $350,000, they're saying you got a home site, but they're also saying you got an interest in the common area that's worth something, and they also said, I thought you got $100,000 worth of sort of tax credit. I think that's their argument. Okay, and what I'm trying to understand on the $100,000 is, isn't it always true that when you do something that's deductible, you're getting that deduction as part of that doing? When I give $100 to the church, maybe it's completely out of altruism, but I'll also get the benefit of that deduction. So why would that count as kind of value against me? That's what I'm trying to understand, and that may demonstrate that I don't understand the analysis. No, you understand. So that was my question, which we took a while to get to, but that's what I'm trying to get to. Okay. The argument that the tax deduction should be considered to be part of the disguised sale income was not an argument that the tax court even accepted, and I think with good reason, because the case law says that the potential of a tax deduction is not property. It's not partnership property. That's the Randall case. But I'm asking why isn't it even more clear than that? If by getting a deduction I get value for my contribution, then isn't that always true? That's my point. If I give $100 to the church, that's going to be a $100 deduction. So now the commissioner or the IRS would say, well, you got value for that because you got a deduction, and therefore you didn't really give a contribution. And that seems very circular to me, and that seems like what the $100,000 argument is, but I may be missing it. Maybe I'm asking the wrong person. I should probably ask the person who made the argument. I think the easy answer is it's not property, and therefore it can't be the subject of a disguised sale. But there is a certain irony in their argument, and that is on the one hand they say that tax deduction ought to be counted as part of this disguised sale analysis, but on the other hand it ought to be completely disallowed. So they're trying to ascribe a value to something that in the next breath they say should be entirely disallowed. Shouldn't. Doesn't even exist. All right. But then are you disagreeing that they are also counting the value of the common area in this disguised sale analysis? Yeah. I think we need to be real precise about what the facts are and what they're talking about. What they say is that each limited partner got an interest in the common areas of the ranch, which they say equates to one-forty-seventh, since there are 47 limited partners, of 10 million, which is what they say is the value of the encumbered common area. That, though, misstates both the interest and the value. But are they using that as part of the disguised sale aspect, whether you agree with it or not? I disagree with it. No, but whether or not you agree with it, is that the argument? Yes. Okay, now you can respond to the argument. I just want to be sure I'm understanding the argument, and then I want you to respond to it. First of all, I do agree, we do agree for purposes of this appeal, that the value of the homesite parcel is indeed subject to the disguised sale, but they're only worth $15,000 to $28,000. So they're looking for something that will fill the gap up to the amount of the limited partner's total capital contributions. What did you say the homesite was worth? The homesite parcel, the five-acre homesite parcels, are worth $15,000 to $28,000. That's it. That's just a fraction of the capital contributions. And what effect does that have on the outcome of the case? Well, I think we would need to remand on the disguised sale issue so the court could fix the value of the homesite parcels, which right now we just have a range, for purposes of determining what the true amount of the disguised sale is. And then once determined, what happens? I'm trying to get to a bottom line. I'm a bottom-line sort of gal. There would have to be a computation, I think, of the gain. They would have to take into account the amounts of taxes already paid by the original limited partners. It would be a computation issue at that point. But certainly – It would affect the total. If we accepted your – so backing up. If we accepted your argument that there should have been a loud deduction, that this was proper and overrule what was done on the documentation and the boundaries issue, then you have to decide the disguised sale. I think you would have to decide that anyway. Okay. And then that has what effect on these partners? None on the limited partners, only as to the original limited partners, because the disguised sale affects the amount of income that is recognized as to the original partners, and there are three of them. Right now the court has held that every dollar of the limited partners' capital contributions was exchanged for a disguised sale of partnership property. We say that's just wrong. The only amount that was exchanged – And you don't want to tell me the effect. I mean, can you tell me the effect of that? Because I'm still not really getting – this may be why I have trouble understanding the argument in the briefs. Right. Because you all aren't making it very clearly.  It would dramatically reduce the amount of disguised sale income. Okay. Dramatically. To an amount equivalent to just the homesite parcels, 15,000 to 28,000 per homesite parcel. Get back to your main argument then. Keep going. Okay. Well, I was just – there were so many arguments in this case. I wasn't sure what my main argument was. We'll give you an additional five minutes uninterrupted. I think you've already given me, Judge. This needs to be sustained. Right. I think you've already given us an additional total of 30 minutes per side. I think we can live with that, but I appreciate that. All right. I think what they're saying is I got you off track on the disguised sale, so go back to the other arguments you were making and finish those out. Well, I'll continue with the disguised sale because we're not quite done with that, I don't think. With respect to the common areas, they talk about having an interest in the common areas. The real facts are that the limited partners do not and will not have an ownership interest in the common areas. The partnerships currently own the common areas, and at some point in the future they will transfer them to the BCRA, the Bosque Canyon Ranch Association, which is the homeowner association. But the limited partners do not and will not have a fee-simple ownership interest in the common areas, and that's where they missed the boat. Well, I have to interrupt you myself. Sure. I thought I read that they did have the right to trap and hunt and use that common area. Judge Dennis, that's right. They do have the right to use the common areas, but that is not equivalent to a fee-simple ownership interest in the common areas. All right. There's a difference, of course, between the right to use and fee-simple ownership, and, of course, you value them differently. The problem with respect to the right to use is they never valued what this right to use is. Can anybody else, could I go out to this ranch and just start running around hunting and enjoying the beauty of the surroundings, or would that be kind of hard to do? No, I don't think so, except that the limited partners don't have the right to exclude others. It's the partnerships that have the right to exclude others, and likewise it's the partnerships. So who is using this common area other than the partners? The limited partners and their guests. Okay. So that kind of answers the question, doesn't it? With the permission of the partnership. Correct. Correct. And that's the point. They do have the right to use, but the commissioner never ascribed a value, never tried to prove the value of this right to use. What about the holder? Does it have any? The what, Your Honor? The holder, the national? Oh, NALT? NALT. Does it have any control over the use of the common areas? Yes, because the common areas are subject to the easement, and NALT, through the easement agreement, has the right to enforce the restriction of uses on that easement. So I think if I can sort of cut to the bottom line on the disguised sale issue, you have a capital contribution, and it was made in exchange for the home site parcels, which are only worth $15,000 to $28,000 apiece. They were made in exchange for a partnership interest, which is a non-taxable transaction under the tax code. A capital contribution for a partnership interest is not taxable. And then you have a right to use, but they never met their burden of putting a value on that use. So the bottom line is that the tax court's determination that every dollar of capital contribution was for a disguised sale of income, that is wrong. And at most, the disguised sale is limited to whatever we determine is the value of those five-acre home site parcels. And there would need to be a remand on that? Yes. It's limited, though, just to valuing the home site parcels. So if you win on the deduction issue, there's a remand on the sort of penalty-slash-valuation issue, and there's a remand on this disguised sale issue? Yes. And if we lose on the deductions, that's it. But we would still have a remand on the disguised sale because it's a different issue. But you would feel like we should vacate the penalty and that's the end of that? Yes, exactly. I'm sure they have a different view, and we'll hear all about that. Yeah, exactly. I think at this point I can shift to the perpetuity requirement. The tax court held that the easements here did not satisfy Section 170H2C, which we call the first perpetuity requirement. The restriction on use must be granted in perpetuity because of these boundary modification provisions in the easement. That was the court's sole basis. Can you help us with the line drawing here? Because I can understand. So your distinction of the Fourth Circuit bill case is, well, that was kind of going outside the original plot. We're trading, you know, this room for that room over there versus this chair for that chair. And I understand that distinction, but then kind of where does that end? If you have a huge area of several hundred acres and I trade my five acres for his five acres for these five acres, that seems very much like Belk. On the other hand, if we determine that, oh, it turns out the, you know, the spotted owl is nesting over here in this little corner that I had planned to build my house, and so we have to kind of move it around so that I don't interfere with the spotted owl, that makes a lot of sense. Or if the boundary was here, but it needs to be here to avoid some, you know, water source or this or that. And I think that's where you all are trying to go with this. But the problem I have is, like, if we were to go with you, where are we drawing a line that would work for future understandings? Yeah, I'm not sure you need to draw any firm line other than to say that when the exterior boundaries of the easement remain fixed in perpetuity like they will in our case, the exterior boundaries will never change. The exterior boundaries of the home sites won't change either. Well, they could, Your Honor, if they were to be modified. The size of the five-acre home site part, the whole of the slices of Swiss cheese, so to speak. Yeah, but didn't it say that this ability to change was only on interior land? Only on the home site parcels, which are excluded from the easement. All right, so the line on the exterior that defines the property, that can be moved? No, the exterior boundary of the easement will never change. No, I'm talking about of the home site. Okay. The boundary can move slightly, but the size of the home site parcel will always remain at five acres. Simply the shape of the home site parcel won't change. Well, I thought there was an argument that you would be able to bunch all the home sites together, theoretically, by moving them like the holes in the Swiss cheese. Right. Take all the holes and put them over in one side of the cheese. This is the argument against allowing this. I don't think they make that argument because, remember, it talks about boundary modification. It doesn't talk about relocation of the home site parcels. That's another distinction. This is simply slight boundary modifications. And importantly, unlike in Belk where you had land swapping, you could lift the restriction off property inside and put it on property outside, which compromised both the qualified appraisal and it compromised the baseline documentation because neither one at the outset evaluated that property outside the easement. What is there in the plan, or whatever it is, that makes the possible revision of the home sites slight, as you call it? What is slight? What does that mean? Well, I think it's simply Article 3.2.1, I believe it is, the boundary modification provision, which talks about making slight modifications to the boundary. It doesn't talk about relocating the entire hole in the slice of Swiss cheese. It's just slightly changing the shape to accommodate changing environmental conditions and the like. None of that would compromise the qualified appraisal or the baseline documentation because both covered all the property that would be subject to the modification. It still remains within that one original range. Yes, exactly. Okay, I think your time has expired. If you need more time, I would consider giving it to you because it's a complicated subject. Are you satisfied, Mr. Levenger? Yes, Your Honor, I think I've reserved seven minutes for rebuttal. Okay, thank you. Ms. Hauser, I'm sorry. Thank you, Your Honor. May it please the Court, I agree with the breakdown into three arguments. I think I'd like to start just by quickly discussing the disguised sale issue and clear up any confusion there. Can you clear up my question? Do you understand my question about the $100,000? I do. Okay, good. I think the point I was trying to make in the brief, perhaps too elaborately, is that this is a situation where third parties gave value in exchange for something. What they were sold in the marketing materials is the home site, the right to use, the common areas, and the marketing materials kind of sold the tax deduction as a rebate. So trying to explain, that's why a reasonable person in an arm's-length transaction might give this value in exchange for what they got, and what they got is the home site, the right to use, the common areas, and the pass-through deduction. What was the third item? The pass-through deduction. How does that differ from a charity sends me a solicitation, please give $100, asterisk, we are a 501c3, all contributions are tax deductible to the full extent of the law, which is selling the deduction to me in exchange for my contribution. I see your point. One, it's the marketing materials here actually listed it like a rebate. Two, I'm not trying to make this as an argument for tax purposes. You could say, well, if you're getting something back, it's not really a gift. That's not the argument that we're making. Good, because that would kind of wipe out all deductions for charitable donations, which would be exciting to the students here, but kind of contrary to what we all understand. This is simply the argument. This is what the people thought they were giving value for because it's what was laid out in the marketing materials as why it would be worth making this investment. And what impact does that have? I'm sorry. Would you please speak up a little bit? Certainly. Which one of these? I'm having trouble hearing. Probably the one on your left right there. Move that up maybe. Or the other one, I don't know. Hit them and see which one works. I can't listen as fast as you're talking. I apologize. My question is what impact, and you can probably move that up if that would help. Okay. What impact, if we were to agree with you that part of the value being sold is this deduction, what impact does that have on the case? It's just another reason that you can affirm the tax court's conclusion that the entire amount given by the buyers here was part of a disguised sale. Okay. Do you understand why I think that's a little bit circular, at least as far as the deduction is concerned? It seems like it's always true if you do something with awareness of tax consequences and those tax consequences include a deduction, that that's part of why you're doing that. Then now you're going to say that's value that then offsets. Right. I think that I understand your concern. I don't think it affects the outcome of this case in any way. Okay. I think that the issue here is that the buyers gave value in a transaction between third parties. That's our general assumption of fair market value. What they gave, what they got in exchange was these home site parcels and also the right to use the common areas. That's not materially distinguishable from the way if you buy in a suburban development that has maybe a clubhouse, tennis courts, and with the house comes the right to use the tennis courts and membership in the homeowners association, but we still view it all as part of that real estate transaction. That's what this situation is here because the partnerships were bound by contract to eventually contribute all the common areas to the BCRA, the homeowners association here. That's why the tax court said that that land was being held in trust. Yeah, but I live in a development. There's a park down the street. Let's say that that park is worth $100,000 and there's 20, I'm going to get myself in trouble trying to do math, but there's 20 people in the development. I don't feel like I own $5,000 of that park because while I have the right to use it, I don't own it. I can't keep anybody else out. I can go down to the park, but so really could probably anybody else, and that doesn't give you any ownership at all in that. So I realize there's some value to being able to use the park, but I don't know that I can value that by taking $100,000 and dividing it by the 19 other people and myself who could use that park. I take your point, Your Honor, and I would just say that if you think the entire amount paid, I mean perhaps I don't know why these people gave the money. Why do these people give money in arm's-length transactions? This is what they got. If it's not worth that, maybe they got ripped off. Well, they're saying they got a share in the partnership. They got a share in the partnership. But the partnership has nothing left because it's given away the easements and it found itself to give the remainder of the property. Does it have the underlying land? It's found itself to give that land to the BCRA. That is the basis of the tax court's decision. If you think the tax court needs to look at it further, you should remand for them to look at that property. I would like to talk about the penalty issue here, which is, you know what? I think it might make more sense to start with the donation of the easement. The tax court denied the donation entirely here following felt because the boundaries of the easement are movable. And the commissioner urges this court to join the Fourth Circuit in holding that the movable boundaries make that easement not deductible for the reasons given by the Fourth Circuit. You understand my concern about the line drawing. I'm concerned about the idea that it's completely fixed, and so if I've gotten this, so these are my five acres, and we find out this little edge turns out to be where the Spotted Owl is. So I just want to slightly avoid the Spotted Owl by moving it like that. So it's very small, and it's for good conservation purposes, and it's all this kind of thing. Then you're like, bam, that's the end of it. In perpetuity, your history, goodbye. That seems a little rigid. There's absolutely nothing wrong with giving some additional amount in order to protect the Spotted Owl on that corner. But I still want my five acres. The problem is that now you're asking some property that was supposedly burdened in perpetuity to be relieved of that burden. But I'm giving you the Spotted Owl back. That's what the amicus calls hyper-technical interpretation. It's also what the Fourth Circuit didn't vote. No, the Fourth Circuit had a whole. The Fourth Circuit, this is the whole plot. This is the whole plot of which there's little subparts, and now we're moving over here. Now I'm going over and taking my neighbor's house, not just making little changes around here. So that's why I'm saying to me, and my colleagues may disagree, I think just completely saying everything has to be rigid down to the last inch is an unworkable and kind of ridiculous rule. On the other hand, I agree you can't just keep, well, now I want to have this guy's lot, now this is going to be the lot, because then you never really have the conservation purpose if you're just jumping all over the place. So why would a line of the knout having to oversee this, and these being true boundary modifications rather than complete wholesale exchanges, why wouldn't that be a sufficient limitation on a sufficient middle ground kind of line that we could draw? For the reasons given by the Fourth Circuit, because in the Fourth Circuit, in both, there was also a donee organization that had to agree to the boundary modifications. The problem is that there's no, that that changes, as the Fourth Circuit pointed out, the way the property is valued, and also the baseline documentation, because we don't know, we now don't know what property was encumbered for the tax, in exchange for the tax deduction. And so your position is any modification, even if it's a foot, is too much and wipes this whole thing out? Yes. Okay. I mean, his leash is clear. And I also think that the donors are the ones who create the easement. The donors are the ones who draw the line in the first place. And the donors can draw the home sites with additional space if they would like to have that flexibility within them. If they think that five acres is too constricted an area, they could have made six-acre home sites. Well, they can't get more than five acres under the instant plan, and it has to be within the exterior boundaries of the entire thing. So this is not Bell. The facts are different. The law may be the same. It doesn't sound like it applies here.  They cannot have six acres. They can only have five acres. And the shape of it can be varied, and yet NALT has to agree that it's done without negatively affecting the purpose of the easement. My point was not that they could have six acres under this instrument. My point was that it was the taxpayers who wrote the instrument, so they could have written it however they liked. It doesn't matter what they could have done. It's what they did do, how they wrote. Yes, and now I don't think it's unfair to say that they should be bound to what they wrote. And they're willing to be bound to what they wrote because that included a shift internally of those home site boundaries. It is very difficult for me to see how areas can be— how we can discuss property as being protected in perpetuity if the easement that supposedly burdens that land can be lifted. De minimis non curat lex. This is hyper-technical, very minimal. If the words slightly actually appear, maybe we would have a different case. It doesn't appear here. It's just whatever the NALT agrees to. And is there some reason to think NALT is not adequate to oversee the concerns you have? I don't have concerns about NALT in this case, but in this— well, actually, there is evidence and record of the NALT agreeing to move boundary lines to permit a three-car garage, which I'm not sure is fully consistent with NALT's— What did they get in exchange? They got another small area, but it wasn't like there was a spotted owl on it or something. It wasn't driven by a conservation concern, like the spotted owl example. It was driven by the— But you wouldn't care. I mean, you're not distinguishing between the three-car garage and the spotted owl. You're saying they all fail, as long as there's even one foot of change. No, I'm saying— History done, out of here, no deduction. If you want to add for the spotted owl, then that's fine. Well, I mean, of course I can always give more. I can have five acres and give you an acre. You're not going to be unhappy about that. I get that. You'll always take more. But that isn't the answer. That isn't the question. I'm sorry. Would you agree that if the home site boundaries were fixed, that we would have a different case and maybe go the other way? Yes, if the home site boundaries here were fixed, then this case would not be back. The fact that they're— But now Mr. Levenger says they're not fixed, but they can only be changed slightly. Now, I don't know where the language is that controls that, but if it does only allow a slight change, would that satisfy you? I think slightly is Mr. Levenger's word. Pardon? I think slightly is Mr. Levenger's word. I don't think it— A revenue word? Mr. Levenger's word. Yes. All right, what about the baseline documents? It seemed like they took a very restrictive version of that, restrictive view. So, again, if we were to write this case and we're trying to, in addition to do justice in a particular case under the law, write something that other people will look to, other people who might want to donate to conservation purposes, how do we—what is it that they're supposed to have turned over that they didn't turn over? I think that the legal holding in that, that the baseline documentation needs to be a literal baseline, it needs to be done at the time of the donation, is correct. But the real significance of— I don't think that this is a guidance case on baseline documentation because it's a factual issue. This was a lengthy trial. The tax court visited the property. It heard testimony from the developer who compiled the baseline documentation. It heard testimony from the president of the NALT about his views on baseline documentation. And the tax court, as a finder of fact, looked at that and found that the baseline documentation here was inadequate. But I think that finding was as a matter of fact. But that's a bit of a problem, isn't it? Because then it means we're just relying on whoever the particular judge of the tax court is and how they feel on that day about how, you know, this pile of documents— well, this pile went high enough that this one now is. And I don't think that's—I mean, let's back up for a moment. There's a purpose to this whole scheme, which is to encourage people to donate land for conservation purposes. We don't accomplish that by saying, but we ain't going to tell you what the rules are. We'll just let you figure that out when the IRS disallows the deduction you were planning on. I hear you. Actually, you can just donate land for conservation purposes any time, and none of these rules will apply. As long as you donate it in pre-simple, we don't look at any of this. Okay, but again, you could also give— And 90 people out of 100 are not going to do that. You can also give to a charity and not claim the deduction, but a lot of people do. It doesn't make them any less charitable, but they like the deduction. So tell me about those people. No, if you give money to a charity, that's deductible, and the IRS doesn't have this long checklist. What happens with conservation easements is the ordinary rule is you cannot take a deduction for a partial interest in property. That's a statutory rule, and when Congress made an exception to that rule, it was Congress that created this long list of requirements that are necessary when you give a partial interest in property. Okay, so that was for a purpose. It was to encourage people. So you have the people that would just give the property fee simple, whatever. Those people didn't need this bill because they could have done that a long time ago. So the people for whom this bill is geared, which are the people that are charitable but would like a little deduction out of it, for those people, don't they need some knowledge of what's going to suffice in terms of these baseline documents and not just a, well, we'll let you know when we get there? The baseline documentation is necessary here because the partnerships reserved rights, not just reserved rights on the property, but reserved the rights to inconsistent uses of the property. So the problem is if the donee organization was trying to enforce the conservation purposes, then the donor could come back and say, well, we reserved the right to do those things. At that point, the donee organization needs baseline documentation to show that the exercise of the reserved rights is compromising the conservation purposes. How do you defend the tax court's omission of so many of the things that were included in the baseline documentation? Aerial photographs, photographs that NALT biologists made in 2004, the habitat assessment report, photographs taken by NALT's president in 2003, NALT's biologist report from April of 2004 on the gold-cheeked warblers, and a site plan with home site locations. The tax court ignored that when saying that the baseline documentation wasn't sufficient. If we add is and these, we get a different picture. I believe the tax court gave its reasons for disregarding some of the documents, especially the ones that were significantly before the donations, in particular because this area was under development during the period between the taking of those pictures and the making of some of those documents and the donations, so that there's reason to believe that the condition of the property would have changed during that period. That's the reason the tax court gave for disregarding those documents. This court has been discussing what happens if you uphold the... I would like to start by agreeing with Mr. Levender that if you reverse the tax court on the baseline documentation and whether the boundaries need to be fixed, then the case needs to be remanded for evaluation and for further proceedings on the valuation penalty as well. If you... Well, I think he not... Well, we'll let him explain what he's conceding on the... He has some issues with the penalty, but I guess he's saying if you get the deduction, maybe you can assess the penalty relative to the real number. That's right. I think that is what he's saying. Okay, but he can tell us. I think that's what I was trying to say as well, Your Honor. If the court upholds the tax court's denial of the deduction on one of these preliminary issues so that the deduction is disallowed entirely, then the case presents an issue of whether and how the Supreme Court's opinion in Woods applies here. I'm sorry. Say that again. If the deduction is disallowed entirely for a legal reason, which is what the tax court did here, if this court affirms that, then this case presents an issue of whether and how the Supreme Court's opinion in Woods applies to the penalty issue in this case. The tax court here found that following Woods, if it disallowed the deduction entirely, then a 40% evaluation penalty would apply here. The commissioner disagrees with that analysis. The commissioner thinks that the 40% evaluation penalty does apply here, but not simply because the deduction was disallowed. The penalty applies because the property, the value of the donation was grossly misvalued. The value of the easement was grossly misvalued. And so when the commissioner realized that what he believed was a mistake by the tax court, the commissioner did ask the tax court to correct that mistake by making evaluation determination then in the first instance. The tax court did not look at that then. We think this court does have the power to look at valuation in the first instance, but it would be unusual and it would certainly be reasonable to remand the tax court for valuation in the first instance. I'm a little unclear why the tax court would ignore both sides saying, hey, you messed up. I can't answer that. Okay, there's just no explanation. You can't answer the tax court. There you go. The tax court thought it was following the Supreme Court's decision in Woods. In the Woods case, the disallowance of the deduction as a necessary consequence brought the value to zero. That's not this case. This case is more like the Alpha 1 case out of the federal circuit where the disallowance of the deduction leaves open the question of value. And so just like in the Alpha 1 case, there needs to be a determination of value before it can be determined whether the policy applies. Okay. There are a lot of issues in this case. And I'm just around, so I would like to take a minute and see if there are any more concerns about this. But we are asking, in sum, we are asking the court to affirm the tax court on the BELC issue, on the baseline documentation issue, to affirm the imposition of the 40% penalty if you feel you can do that even though the tax court did not make a valuation determination or if you need further valuation determination to remand to the tax court for that valuation determination and to affirm on the disguised sale. And again, if you think that further valuation is necessary on the disguised sale, you can remand on that issue as well. Thank you. Thank you, Ms. Houser. Mr. Levenger, you have seven minutes. All right. Thank you, Your Honor. I'll start with that last point first. If this court affirms as to the perpetuity requirement, the BELC argument, and the baseline documentation requirement, that is the end of it with respect to the penalty. It makes no sense. And there's no case law that allows them to get a second bite at the apple having won and gotten a complete disallowance of the deduction. There's no authority and no statutory authority that allows them to ask anybody for a partial disallowance merely so they can try to set up this 40% gross valuation penalty. Alpha is not that case law. Okay, so let me play the devil's advocate on that point. I guess the argument is what is to prevent so I'm sure you think your client acted in good faith and if they stumbled it was a good faith stumble as opposed to a knowing barging in and trying to override these rules. But what is to prevent somebody from coming in and trying to pull a fast one, that's what penalties are all about. I mean, if you miss the deadline to pay your taxes, even if you're a good, honorable, nice person, you've got to pay the penalty because otherwise there's no disincentive for people to say, well, I don't like April 15th as a deadline. I believe I'll wait until May 15th. The disincentive is now the penalty and interest and I don't know what else they hit you with because I get it done by April 15th. Right. Well, there well could have been a penalty based on the tax court's disallowance on non-valuation grounds, but they didn't ask the tax court for that penalty. Okay, so that's the procedural issue, that whatever hammer they had they left in the shed. Yes. Okay. Nor have they asked this court for any kind of alternative penalty. They're going for the big enchilada. They want the 40% gross valuation misstatement penalty. You're saying that's just the wrong penalty. Maybe there's some other penalty that would apply for the person who messed this all up and took a deduction they weren't entitled to, but it ain't this 40% and that's all they asked for and even that they kind of messed up. Right. Okay. Right. Yeah. Back to the disguise sale a moment. In this business about the tax deduction somehow being part of the disguise sale income, the tax court didn't make that determination and I don't think there would have been any basis to do so because, very importantly, a potential tax deduction is not property. And in order to trigger a disguise sale under Section 707, you have to have property, partnership property, in the first instance, and a potential tax deduction is not property. They cite the Fourth Circuit case involving the Virginia historic tax credit. That might be property because it was marketable, it was guaranteed, but a potential tax deduction under the Randall case at the U.S. Supreme Court is not property and that's where that issue should end, right there. Well, assume we do reverse perpetuity and documentation. What would we be remanding and asking the tax court to do? They would have the opportunity to have the tax court determine the valuation issue, which it was tried, but the court chose not to decide the case based on the valuation ground because it's extraordinarily complicated and it would have only resulted in a partial disallowance. So he went with the two legal grounds, the perpetuity ground and the baseline documentation ground that resulted in the total disallowance. So on remand, there would be a determination of value. For what purpose? For the deduction? Yes, for the purpose of the deduction. Let's put the disguise sale out here alone for a moment because it's a separate issue. So, yes, the valuation would be determined, the court would determine whether any kind of penalty attaches to that depending on the valuation result, and the court would determine, or perhaps at a partner level determination, there would be a determination of defenses, like the reasonable cause defense that is potentially available to BCR1, and the court in its opinion on page 21 has already sort of foreshadowed that that defense would be available. So that's another issue. I hate to sort of ask the court for a remand because this case has gone on for years and years and there's tremendous litigation fatigue on both sides. To be perfectly frank, it would not break my heart if the court were to affirm the total disallowance of the deduction and end it right there with no penalty. That would at least put an end to this litigation. But I know the court has to do the right thing. And frankly, I think... Well, don't your clients want the deduction? Well, they don't want the penalty. And they do want finality. But I recognize that this belt determination, this perpetuity determination... Maybe I'll need you to talk in the hallway then if that's what you're saying. Get back to my question. Assume we reverse on perpetuity and documentation. What do we tell the tax court to do? To decide the alternative arguments that were not decided, including the valuation. Which are? The valuation was the main one. I think they made an argument, too, that there was not a legitimate conservation purpose, which I find to be not meritorious. Maybe because they allowed skeet shooting or something? I guess so. I guess that's the argument. But the truth of the matter is NALT certainly believes that the conservation purposes are protected in perpetuity. And that's what it's been doing year after year through monitoring using the baseline documentation. Finally, what the one you set aside. Well, that's the disguised sale. And there the court said that every dollar of the capital contribution amounted to a disguised sale of partnership property. So it ignored the conservation easement? Well, the court's ruling is very cryptic. It's almost as if he said that the common areas were partnership property that was transferred. To that I say that's wrong. The common areas are owned by the partnership to this day. They'll eventually be transferred to the BCRA, potentially. But they will never be owned by the partners. The partners' capital contributions did not go and could not go for fee-simple ownership in the common areas. And the partnership, there's no way the partnership could transfer those to the partners? No, Your Honor. No, because under the limited partnership agreements, the partnerships own the common areas and potentially will transfer them not to the limited partners but to the BCRA, the homeowner's association. But are they legally prohibited by the agreement from doing that? I believe they are. Okay. I believe they are. We'll check it out. I think that's right. What's the answer? Well, okay. I think my time is up unless the court has any further questions. So we'll never know what he said to you? Oh, ending on a cliffhanger. You have to come back next year to Tulane to find out what happened. Okay, Mr. Lovinger, thank you. Thank you, Your Honor. The case will be submitted. Before we adjourn, we want to thank the attending Tulane law students for their attention and presence. And we will be holding court tomorrow at 9 a.m. at 600 Camp Street if you want to come down. That's open to the public also.